UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODOLFO SANDOVAL RODRIGUEZ
(A-200-907-654),

        Petitioner,

    v.

WARDEN OF THE CALIFORNIA CITY
DETENTION FACILITY, et al.,

        Respondents.

No. 1:26-cv-2080 DJC CSK

ORDER AND FINDINGS AND
RECOMMENDATIONS

Petitioner Rodolfo Sandoval Rodriguez (A-200-907-654), a native and citizen of Mexico who is proceeding without counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner entered the United States on an unknown date and at an unknown location. On April 16, 2025, petitioner was arrested for petty theft and disorderly conduct by local law enforcement, and immigration officials took petitioner into custody and placed petitioner in removal proceedings. Petitioner has been detained since April 16 or April 17, 2025. This habeas action concerns petitioner's detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and that petitioner be granted a

---

[1] Petitioner is proceeding in forma pauperis. This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

bond hearing within seven days of the date of the adoption of these findings and recommendations.

## I.    FACTUAL BACKGROUND

Petitioner is a native and citizen of Mexico.  (ECF No. 8-1 at 1.)  Petitioner entered the United States on an unknown date and at an unknown location.[2]  (Id.)  Petitioner is not a citizen of the United States.  (Id. at 3.)  On April 16, 2025, petitioner was arrested by the McFarland, California Police Department for disorderly conduct (misdemeanor) and petty theft (misdemeanor).  (ECF No. 8-2 at 9.)  This arrest triggered an alert to immigration officials.  (ECF No. 8-1 at 2.)  On April 16 or April 17, 2025, immigration officials took custody of petitioner from the Kern County Sheriff Lerdo Detention Facilities and detained petitioner.  (ECF No. 8-1 at 2; ECF No. 1 at 5, 12.)  Petitioner was placed in removal proceedings.  (ECF No. 8-1 at 2-3.)

On March 17, 2026,  an immigration judge ordered petitioner removed to Mexico and denied all of his applications for relief.  (ECF No. 8-4 at 1-6.)  Records from the Board of Immigration Appeals ("BIA") reflect that petitioner's appeal of his removal order was received on March 30, 2026 and remains pending.  See https://acis.eoir.justice.gov/en/caseInformation.  Petitioner has not received a bond hearing.  (ECF No. 1 at 5.)

## II.    PROCEDURAL BACKGROUND

On March 16, 2026, petitioner filed his petition for writ of habeas corpus, a motion to proceed in forma pauperis, and a motion to appoint counsel.  (ECF Nos. 1, 2, 3.)  On March 17, 2026, the district judge referred the matter to the assigned magistrate judge for all further proceedings.  (ECF No. 5.)  On March 19, 2026, this Court ordered respondents to file a response to the petition within seven days.  (ECF No. 7.)  Petitioner's reply to respondents' response was due within ten days after being served with respondents response.  (Id.)  On March 26, 2026, respondents filed a timely response to the petition.  (ECF No. 8.)  Petitioner did not file a reply to respondents' response, and the timeline to do has expired.  (See Docket.)  Briefing is now

---

[2]   The order of removal issued by the immigration judge states that petitioner initially came to the United States in 2003, at age 12, encountered immigration officials in 2010 and was "sent to Tijuana" but returned to the United States that same night.  (ECF No. 8-4 at 1.)

2

complete.

**III.    LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**IV.    DISCUSSION**

Petitioner challenges his continued detention on the grounds that his prolonged detention violates the Fifth Amendment. (ECF No. 1 at 18-19.) Respondents argue that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(E), a provision enacted under the Laken Rily Act ("LRA"), on account of petitioner's April 16, 2025 arrest for petty theft. (ECF No. 8 at 3.) Respondents also argue that petitioner's "assault conviction" is a qualifying offense under the LRA.[3] (Id.)

**A.    Due Process Claim (Claim One)**

In analyzing petitioner's challenge to his detention, the court "must first identify the statutory provision that purports to confer" authority for his detention. Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). 8 U.S.C. § 1226(c) "carves out a statutory category of [noncitizens] who may *not* be released under § 1226(a)," mandating detention for an alien

---

[3] In a footnote, respondents also state that petitioner has convictions for drug possession and juvenile dispositions involving burglary and sexual battery. (ECF No. 8 at 2 n. 2.) Respondents argue that petitioner is detained pursuant to the LRA based on his arrest for petty theft and "assault conviction." (Id. at 3.) Based on this argument, this Court does not consider whether petitioner is detained based on other criminal convictions not specifically addressed by respondents.

apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (emphasis in original). In January 2025, the LRA amended § 1226(c) to add a new category of noncitizens ineligible for release under § 1226(a), including noncitizens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who are "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(i), (ii). For purposes of these findings and recommendations, this Court assumes that petitioner is detained pursuant to § 1226(c)(1)(E)(ii) based on his April 16, 2025 arrest for petty theft.[4] Pursuant to § 1226(c), "detention is mandatory, and a noncitizen of the United States … therefore is not statutorily entitled to a bond hearing." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023); see 8 U.S.C. § 1226(c)(1); Jennings, 583 U.S. at 303.

Regarding respondents' argument that petitioner is subject to mandatory detention under the LRA based on his "assault conviction," respondents apparently refer to sections of petitioner's rap sheet. In particular, respondents apparently refer to charges against petitioner for assault with a deadly weapon by means of force likely to produce great bodily injury in violation of California Penal Code § 245(A)(4). (ECF No. 8-2 at 7, 8.) On June 14, 2023, petitioner was arrested for this offense. (Id. at 8.) On November 8, 2024, the charge against petitioner for violating California Penal Code § 245(A)(4) was dismissed "in furtherance of justice." (Id. at 7.) Some courts have found that the LRA, which was enacted in January 2025, does not apply retroactively to arrests occurring prior to enactment of this statute. See Matute v. Jamison, 2026 WL 461557, at *5-6 (E.D. Penn. Feb. 18, 2026) (LRA does not apply retroactively to petitioner's 2006

---

[4] The record does not reflect the outcome of petitioner's April 16, 2025 arrest for petty theft. For this reason and because petitioner raises no claim challenging his detention based on the petty theft arrest, this Court does not address this matter further. However, were this Court to find that petitioner's detention pursuant to the LRA was not mandated based on the petty theft arrest, the remedy would be a bond hearing, as this Court recommends below. See Singh v. Chestnut, 2026 WL 266021, at *4 (E.D. Cal. Feb. 2, 2026).

shoplifting arrest); Araiza v. Hermosillo, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (noting that respondents agree that the LRA does not apply retroactively).  Moreover, requiring mandatory detention for charges which were dismissed due to lack of sufficient evidence raises serious due process concerns.  See Singh v. Chestnut, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026).  In addition, detention under the LRA is mandated for crimes that result in serious bodily injury to another person.  8 U.S.C. § 1226(c)(E)(ii).  A conviction for violating California Penal Code § 245(A)(4), assault with a deadly weapon likely to produce great bodily injury, does not require physical contact or actual injury.  See Cal. Penal Code § 245(a)(4); People v. Brown, 210 Cal. App. 4th 1, 7 (2012) ("Because the statute speaks to the capability of inflicting significant injury, neither physical contact nor actual injury is required to support a conviction.").  This Court need not determine whether the Court assumes petitioner is subject to mandatory detention under the LRA based on his arrest for violating California Penal Code § 245(A)(4) because petitioner is subject to mandatory detention under the LRA based on his petty theft arrest.

This does not end the inquiry, however, because petitioner has raised a due process claim.  While the Supreme Court has rejected a facial challenge to mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003), an as applied challenge is not foreclosed and Justice Kennedy's concurring opinion in Demore specifically noted that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as [Kim] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  Id. at 532.  In addition, "[t]he Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c)."  Loba L.M. v. Andrews, et al., No. 1:25-cv-00611-JLT-SAB, 2025 WL 2939178, at *4 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025); see Avilez, 69 F.4th at 538 (declining to determine whether due process requires a bond hearing for noncitizens detained pursuant to § 1226(c)).  "Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), the First, Second, and Third Circuits have found that 'the Due Process Clause imposes some form of 'reasonableness' limitation upon

the duration of detention ... under [section 1226(c)].'" Loba L.M., 2025 WL 2939178, at *5 (quoting Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021); citing Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209-10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable)). "[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citation omitted); see also Loba L.M., 2025 WL 2939178, at *5. This Court joins other courts that have found that unreasonably prolonged detention pursuant to § 1226(c) without a bond hearing can violate due process. See Keo v. Chestnut, et al., No. 1:26-CV-01192-DJC-CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026); Loba L.M., 2025 WL 2939178, at *5.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with

6

the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Court concludes that petitioner has a protected liberty interest in his freedom from detention.  See Keo, 2026 WL 747117, at *2 (concluding clear liberty interest in freedom from detention where petitioner was detained pursuant to § 1226(c) for over 37 months).  Petitioner has been detained since April 16, 2026, for almost one year, and faces prolonged detention during his appeal to the BIA and further potential judicial review.  This also exceeds the time period the Supreme Court noted in Demore: "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 530.

Next, the court turns to what procedures are necessary to ensure that the deprivation of the protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.[5] Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from

---

[5]  "District courts within this Circuit have adopted a variety of multi-factor tests for determining at what point a noncitizen detained pursuant to a mandatory detention statute is constitutionally entitled to a bond hearing." Mohammed v. Warden of California City Detention Center, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368, at *3 (E.D. Cal. Jan. 26, 2026) (applying Matthews test to prolonged detention claim under § 1225(b)(1)). Cf. Keo, 2026 WL 747117, at *2 (applying seven factor test from Martinez, 2019 WL 5968089, at *7, to prolonged detention claim under § 1226(c)).  As the considerations in the various multi-factor tests are relevant to the due process analysis, the Court will address them within the Mathews framework.

imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). Petitioner has been detained for almost one year and the length of petitioner's future detention is unknown and indefinite where his appeal to the BIA is pending and was received on March 30, 2026, he does not yet have a final removal order, and further judicial review is available after the BIA appeal. In addition, the record before the Court does not indicate whether there have been any delays caused by either the petitioner or the government. The first factor therefore weighs in petitioner's favor.

Second, "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Here, petitioner has been detained since April 16 or April 17, 2025 without a bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. It is not this Court's role to determine whether petitioner is a danger or flight risk, and a neutral arbiter may very well determine that petitioner is a danger and/or a flight risk.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Overall, balancing these factors, the Court finds that petitioner is entitled to a bond hearing under the Due Process Clause where he has been detained for almost one year, his appeal to the BIA was recently filed

8

and is still pending, and the length of his future detention is unknown where further judicial review is available and the removal order is not yet final. See also Jose G. M. L. v. Warden of the Golden State Annex Detention Facility, et al., No. 1:26-CV-0047-TLN-EFB, 2026 WL 472987, at *5 (E.D. Cal. Feb. 19, 2026) (granting preliminary injunctive relief for a bond hearing where the petitioner's detention under § 1226(c) exceeded six months).

## V.      MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends the petition be granted and petitioner receive a bond hearing, the Court does not find the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied without prejudice.

## VI.     CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is DENIED WITHOUT PREJUDICE; and

IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent be ordered to provide petitioner Rodolfo Sandoval Rodriguez (A-200-907-654) with a bond hearing before a neutral decisionmaker within **seven (7) days** of the adoption of these findings and recommendations where the government bears the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight.

3. Because petitioner is proceeding pro se, respondent be further directed to file a status report within seven (7) days from the date of the bond hearing.

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 9, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Rodr2080.imm.bond(2)/2